# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

**JEFF GAYNOR**, individually and as CEO,
**TJFT, LLC**

                     *Plaintiffs*,

       **v.**
                                          **CIVIL ACTION NO. _____**

**RICHARD PEFFALL**, individually and in his
official capacity as Detective, Montgomery County, PA

**KATE McGILL-MAGID**, individually and in her official
Capacity, Assistant District Attorney, Montgomery
County, PA

**MARY ANDERS**, individually and in her official
capacity as Detective, Montgomery County, PA

**RISA VETRI-FERMAN**, in her official capacity as
District Attorney, Montgomery County, PA

**JIM MATTHEWS**, individually and in his official
capacity, Commissioner of Montgomery County, PA

**JOSEPH HOEFFEL**, in his official capacity,
Commissioner, Montgomery County, PA

**BRUCE CASTOR**, in his official capacity,
Commissioner, Montgomery County, PA

**THE COUNTY OF MONTGOMERY COUNTY, PA**

                     *Defendants*

_____

## TEMPORARY RESTRAINING ORDER

       Having read and considered Plaintiff's Motion for Temporary Restraining Order and/or

Preliminary Injunction and to seal the entire matter, and the supporting documentation, and

having heard oral argument from Plaintiff's and Defendant's counsel, it is on this _____day of

_____ 2012, **ORDERED** that said motion be, and hereby is **GRANTED**.

Plaintiff is likely to prevail on the merits of his First, Fourth and Fourteenth Amendment claims that Defendants threat to prosecute Plaintiff for a clearly civil matter in which the Defendants may not be able to come into this court 'with clean hands' is unconstitutional retaliation, absent due process, equal justice, free speech, self-incrimination, official misconduct, abuse of power, unlawful search and seizure, that absent this order Plaintiff and his corporation would suffer irreparable harm for which there is no adequate remedy at law, Defendants' attempt to protect a minority shareholder, or the county and/or state in this instance will not be harmed, and the public interest will be served.

It is therefore, **ORDERED**, that Defendants, and all officials, employees, agents and assigns, are hereby **ENJOINED** from initiating criminal charges against plaintiff Jeff Gaynor and the corporation, THE JUNK FOOD TOUR, LLC.

This Order shall be effective immediately, commencing at this hour of _____ **.**

This Order shall remain in effect for _____ (    ) days unless otherwise modified by subsequent Order of this Court.

A Hearing on Plaintiff's request for a Preliminary Injunction is hereby scheduled for _____ , at _____, in courtroom _____ .



_____

U.S. D. J.

2

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

**JEFF GAYNOR**, individually and as CEO,
**TJFT, LLC**

<i>Plaintiffs</i>,

      **v.**

CIVIL ACTION NO. _____

**RICHARD PEFFALL**, individually and in his
official capacity as Detective, Montgomery County, PA

**KATE McGILL-MAGID**, individually and in her official
Capacity, Assistant District Attorney, Montgomery
County, PA

**MARY ANDERS**, individually and in her official
capacity as Detective, Montgomery County, PA

**RISA VETRI-FERMAN**, in her official capacity as
District Attorney, Montgomery County, PA

**JIM MATTHEWS**, individually and in his official
capacity, Commissioner of Montgomery County, PA

**JOSEPH HOEFFEL**, in his official capacity,
Commissioner, Montgomery County, PA

**BRUCE CASTOR**, in his official capacity,
Commissioner, Montgomery County, PA

**THE COUNTY OF MONTGOMERY COUNTY, PA**

<i>Defendants</i>

_____

## VERIFIED COMPLAINT

## INTRODUCTION

      Plaintiff(s) in this civil rights action is a private citizen who is also the CEO of a very

small start-up Pennsylvania corporation, The Junk Food Tour, LLC.  The multiple Defendants

are responsible for various overreaching corrupted practices including, but not limited to, the

constant threats by Richard Peffall  and Mary Anders to prosecute Plaintiff for a civil matter that does not in any manner rise to a criminal event.  Absolutely None!

Their actions and the actions of others are solely to help a golfing, drinking socializing buddy of the recently indicted and arrested ex-Commissioner, Jim Matthews who reportedly ran a reign of corruption during his twelve year.  His bosom buddy friend from Sea Isle, New Jersey is also a member of Matthews local country club where Matthews it is alleged misused tens of thousands of dollars to pay for dues, fees, drink, parties, gifts, golfing fees and a wide host of other questionable expenses.

Matthews was feared for his ways during his term in office and many people throughout the county curried his favor by performing 'little favors' or in some cases flagrant violations of law where Matthew had quiet equity interests in companies doing business with the county in some documented cases using no-bid contracts.

Under Pennsylvania's crimes code Plaintiff has not performed anything illegal and the malicious orchestrated attack upon your Plaintiff is protected by the U.S. Constitution.

Nevertheless, even though all the Defendants know Plaintiff's actions to get the start-up running with local, national and international awareness of the 4 ½ - 5 hour tour celebrating Philly while taking, in a 1st class coach, to the original landmark locations to experience the very best of Philly's junk food, not a hot dog and French fries but incredible edible delights was in fact, an incredible creative and tenacious management act.

There is no basis for their actions to threaten Plaintiff with prosecution for something they themselves could define no metric as to just how great a job Plaintiff did with very little funding – around $50,000.00.

Peffall threat to prosecute Plaintiff must be considered retaliation for asserting his constitutional rights for equality, due process, abuse of power, retaliation, 5th Amendment against self-incrimination even to participate in their scheme, among others.

Accordingly, your Pro Se Plaintiff seeks declaratory injunctive relief to enjoin the Defendants from bring retaliatory criminal charges against Plaintiff and also to prevent the irreparable harm to the corporation.

## JURISDICTION AND VENUE

1.  This action to vindicate Plaintiff's right, protected under the First, Fourth, Fifth and Fourteen Amendments to the U.S. Constitution, is brought under 42 U.S.C.  1983. this Court hs original jurisdiction over this civils rights action under 28 U.S.C. 1331 and 1343.  This court also has jurisdiction under 28 U.S.C. 2201 and 2202 to declare the rights of the  parties and to grant all further relief found necessary and proper.

2.  Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. 139  because all the Defendants are subject to personal jurisdiction within the Eastern District. of Pennsylvania.

## PARTIES

3.  Plaintiff, Jeffrey Gaynor, is a resident of Skippack, Pennsylvania..

4.  Defendants all reside or work in Montgomery County, Pennsylvania.  All their actions were taken under color of state law. Some of the Defendants as noted in the listing of Defendants are sued both individually and in their official capacity.

5.  The behind the scenes sole minority shareholder – though not listed as a Defendant - through his golfing, drinking, carousing friendship with his fellow golf club member,

Jim Matthews, the recently indicted, arrested ex-Commissioner of Montgomery

County, Pennsylvania is the main problem in this matter.  Exhibit  1 & 2.

## FACT

6.     This small Pennsylvania Corporation was formed in 2009.   Plaintiff had an idea and

concept to provide an alternate tourism experience to people visiting and/or living in

the City of Philadelphia to not only promote but to celebrate the cultural growth of

Philly while also celebrating its famous diverse offerings of incredible foods served at

their original landmark locations throughout the city.

7.     The corporation joined the Convention Center and the Meeting and Planners

Association and others institutions as part of its entre into the city tourism business.

8.     The corporation became operational solely at the tenacity and foresight of Plaintiff

who designed an amazing logo and an amazing functioning website to tell its story

and to take orders through its incredible online backend system.  Exhibit 3

9.     Incredible Flyers promoting the tour were placed by contract in 137 hotels and 57

other locations throughout the city.   NBC, CBS and others have raved in print and on

the airwaves about the tour. A nationally acclaimed television show on one of the Big

Four channels has inquired to do a segment about the tour to be released to their

secure audience of several million weekly viewers and on their website. Exhibit 4,5, 6

and 7.

10.    Two minority partners, no longer associated with the company, came aboard around

April 2010 and another minority investor in a Second Round of funding joined in

August of 2010.

11.    The company was underfunded from the outset trying to compete equally with

companies bankrolled with over Ten Million Dollars (since closed) and others

bankrolled with millions of dollars and millions of dollars for yearly marketing

expenses.  Another competitor for the local tourist dollar generated over three million

dollars annual revenue but was forced to close for a unfortunate and horrific mishap

but has since re-opened.

12.    The corporation's total funding by all parties was around $50,000.  The funding of

$50,000 tried to compete with tourism companies funded with millions and millions

of dollars.  As a comparison, a local pizza joint requires well over $100,000 to sell the

first slice of pizza marketed to people within a two mile radius.  A local water ice

franchise cost over $250,000.00 without any guarantee of success.  It is widely known

that Ninety Percent 90% of all business related to food fold within the first six months

of operation.

13.    In March of 2011 the tour became operational offering almost weekly departures with

its customers actually applauding the adventure and leaving fairly large tips to the

driver and host.

14.    But the ability to market and grow the experience nationally and internationally

proved to be more difficult than anticipated and the corporation soon accepted that

fact that it required a substantial amount to remain in business and grow.   The

company needed more personnel and expensive marketing to possibly reach its

potential and goals or it would close or be sold.

15.    Such facts and concerns were shared with each investor, two of whom noted above

freely chose to sell their equity share of the company at a current discount to Plaintiff

and depart.  Another party had a very small share of the corporation but contemporaneously within a few days decided that his own financial needs concerning his new home was a needed source for his money and he too, was immediately allowed to withdraw.

16.     In this case, there is supposedly an inviolate system for objective screenings of all incoming phone calls requesting a Private Criminals Complaint be filed in Norristown, Montgomery County, Pennsylvania.   The courthouse operators are instructed to immediately direct all calls across the street for the Detectives in an intake office to quickly review and provide direction to the caller of which Plaintiff would suggest well over 90% are told that the matter is civil.    The same rules apply to walk-ins.

17.     The operators in the DA's office are also instructed to pass all calls directly across the street to the same intake office where only a few detectives receive and immediately decide the civil or criminal weight of the situation. No calls are processed directly to an Assistant District Attorney.  None!  It is not their job.  It would be impractical for every ADA to get involved in a protracted conversation as it is not their responsibility and they are paid to be in court.  No Assistant District Attorney (ADA) or District Attorney is involved in the initial communications with a requesting party to file a Private Criminal Complaint.

18.     The Private Complaint Unit is staffed by a County Detective, Detective Richard Marsh and a Private Complaint Coordinator, Detective Bailey.   An ADA may get to review the Private Criminal Complaint ONLY AFTER it is first considered by the Private Complaint Unit.  An ADA is not the originator of the Complaint.

19.     However, according to Detective Peffall who to date has refused to share a copy of

the Criminal Complaint, ADA Kate McGill-Magid, who the very next day was

leaving the District Attorney's office to become a District Judge allegedly *somehow*

*received* a call from a *supposed* complete stranger, Jack Osborne, a Sea Isle City,

New Jersey resident and a extremely close golfing, drinking, socializing friend who is

a member of the same country club of Commissioner Jim Matthews, the recently

disgraced County Commissioner Chairman who during his corrupt reign not only did

many, many unscrupulous manipulations and fiduciary miscarriages of law while in

office.

20.     Eventually thinking he was above the law, blatantly lied to a grand jury for which he

indicted, handcuffed, arrested and may receive seven years in prison for that one

violation of law plus possibly more for his involvement in this perversion of the DA's

office, the Detective's Office and the judicial process and your Plaintiff.  Exhibit 8

21.     Supposedly, because the request was of *such* urgency and of *such great criminal*

*magnitude*, McGill-Magid immediately sought the aid of Detective Richard Peffall

who then enlisted Detective Mary Anders into their meritless scheme to immediately

begin the prosecution and persecution of Plaintiff, CEO of THE JUNK FOOD

TOUR, LLC.

22.     What really happened is that Commissioner Matthews or his cohorts and cronies

acting on Matthews' behalf, together with McGill-Magid concocted a corrupt plan to

harass and criminally threaten to prosecute Plaintiff for the sole benefit of Matthews's

friend to allow him to get around a 1,000% civil small business matter. Exhibit

23.     Any investigation of the phone records and self-preservation testimony of the various parties and Matthews and his cohorts should easily support Plaintiff's claim.  One of Matthews cohort, Barry Miller as reported in many local papers recently resigned or was fired as County Solicitor because he was *the deal maker* for many of Matthews' offending deals. Exhibit

24.     But alone, Pefall and Anders' actions are enough to grant the requested TRO and injunction for various violations of Plaintiff's Constitutional Rights.  Peffall's abuse of his official capacity is yet but abuse of power of Plaintiff's Constitutional Rights.

25.     Fact: On the day of that call from Osborne, Matthews was still feared and viewed with immunity and power by McGill-Magid who owed allegiance to Matthews as her mentor who helped her to be recently elected a District Court Judge in Oreland, PA where Matthews conducts his private businesses she immediately without one ounce of conscience prostituted the integrity of the entire DA's Department for Matthews.

26.     For her quick and callous participation, Plaintiff suggests McGill-Magid is no longer qualified to be a lawyer much less a judge.  If she cannot be trusted not to quickly perform 'favors' for a 'friend' which harms others, she should not be allowed to serve in any capacity in the legal system.

27.     Unfortunately, for the Defendants who had rigged the intake process, three days later, Matthews was arrested for lying to a grand jury, led away in handcuffs as a disgraced politician who had not only allegedly committed perjury under oath about his involvement with non-bid contracts and other matters involving county and possibly state and federal money but also for allegedly misusing tens of thousands of dollars of county funds to pay his dues, bar bill and golf costs at a local country club which he

claims was solely to help him get re-elected so he could continue his reign of unfettered corruption, and other transgressions of law.

28.  The timing of their evil scheme to harm Plaintiff and deny him of his civil rights blew up in their collective faces when their political cover and center of power, Jim Matthews was arrested and lost his official power.

29.  Unfortunately for Plaintiff, Detective Richard Peffall who instead of immediately telling McGill-Magid that it was surely a simple civil small business matter not rising in any manner to a criminal situation and she should drop it, Peffall  instead immediately chose to join the with McGill-Magid to curry favor and not the wrath of Matthews.

30.  Too Late!   Peffall had already directed Detective Mary Anders to set upon Plaintiff initially by telephone threatening Plaintiff with criminal prosecution with the caveat that unless Plaintiff fully acceded with their demands, his current residence would be immediately raided with a warrant for search and seizure by her squad of goons akin to the Gestapo raiding a house in Germany to get the 'occupant'.

31.  Such irrational and perverted acts by Peffall and Anders based on their collusion with McGill-Magid and Matthews to harm Plaintiff first of all violate the Fourth Amendment of the U.S. Constitution against unlawful search and seizure.

32.  Plaintiff has legal files dealing in several instances with legal correspondence between Plaintiff and lawyers which such seizure would go directly in the face of the sacred lawyer/client privilege as would his medical files which would pervert Hippa and the rule of law covering such private material not related to the immediate matter.

33.   Other private matters include the SEC and the back and forth dealings involving $149,000,000.00 which the SEC is pursuing for recovery – as a civil matter - with the cooperation of Plaintiff in his direct knowledge, not his participation in the event – but as a WhistleBlower.  Seizing of such sensitive information certainly could compromise that huge recovery by the SEC – Securities Exchange Commission.

34.   Instead, to gain favor with the powerful Commissioner whom Peffall did not know would be arrested in a few days Peffall chose to drop his integrity and  disgrace his entire department and overreach by miles the boundaries of his sworn fiduciary obligations to protect the citizens and instead immediately agreed to participate in the scheme against Plaintiff.

35.   McGill-Magid was leaving the very next day, so she had nothing to lose to begin the orchestration of the fraud upon Plaintiff.

36.   Their corrupt scheme violates Plaintiff's protection from unlawful and unequal Due Process of the Fourteenth Amendment.

37.   As a matter of record, Plaintiff, himself has tried to bring a few matters transgressions of criminal law and in each occasion Plaintiff has been told, by Detective Richard Marsh, an honest person, who is part of the Intake system that "*It is a civil matter*" even though the theft of Extended Warranty Money by a Used Car Dealer is a criminal offense with mandated prison time by criminal statute in Pennsylvania.

38.   Your Plaintiff acting as Power of Attorney did plead that particular matter in Common Pleas Court – Docket # 2009-37221 and has already been granted Summary Judgment against one of the offenders.  The criminal part of the matter is expected to be still addressed in the near future.

39. It is interesting to note that matter was from an Appeal from a local District Court Judgment adverse to Plaintiff's party.  100% of the Judgments by this one District Judge have all been reversed in Common Pleas Court.  It is a fact that this same judge's personal attorney actively pleads before him and surprisingly has won 100% of his cases before him. That the same judge grabbed a local tiny piece of property and had a deal to sell it to the township for $100,000 before a resident complained and reduced the amount is another example of some of the 'dealings' by judges tolerated in Montgomery County.

40. Robbing orphans and giving their money to local attorneys who then kick-back part of their fees to the Party is another example of the rampant misuse of power by some local judges.  There are a few, but they exist.

41. Another instance of Plaintiff requesting a Private Criminal Complaint was the unlawful actions of a well-known local car dealership - Docket # 2011-14520 - who demanded Plaintiff immediately pay for unnecessary auto repairs of several thousands of dollars with the threat that if the vehicle was not immediately repaired by the dealer, Plaintiff could expect great physical harm due to the "non-existent" problem with the car.   Two and one half years later the vehicle still runs perfectly without any repairs.   Both actions are major criminal law violations by statute in the Commonwealth of Pennsylvania.   In both instances, Marsh told Plaintiff, "*it's a civil matter*."

42. In the above matter, Common Pleas Court has granted by Order the right to pursue Plaintiff's claims <u>as a civil matter.</u>

43.     Another case now in Montgomery County – which is also based on contractual law is now before Common Pleas Court to which the Defendant has not contested the Complaint and your Plaintiff is awaiting Summary Judgment.  To be able to go into the matter between Plaintiff and his attorney or for discussions involving settlements would be illegal under the Fourth Amendment.

44.     Plaintiff is 68 years of age and Jewish.   The three main antagonists – Osborne, McGill-Magid and Matthews all appear to be Irish.    Plaintiff is not presently aware if their actions are based upon any ethnicity.   Such actions would give rise to other Constitutional infractions.

45.     McGill-Magid believed that she could start the process, leave the office and let her partners-in-crime proceed without her involvement.  Nothing could be further than the truth of her major involvement in a scheme to harm your Plaintiff for the sole financial and harassment benefit of a country club and social golfing friend of Matthews.

46.     Whether or not Matthews can be bought for a cup of coffee, money or other 'favors' is not the issue.  That without hesitation, their crew decided to harm Plaintiff contrary to the Constitution is the issue.

47.     The Defendants are not constitutionally free to threaten persecution on baseless charges for a matter that is first and foremost a 1,000% civil matter under contract law and does not rise to any criminal level in any manner whatsoever.

48.     Plaintiff's and the minority shareholder's rights are fully disclosed in the Second-Round Offering Agreement are part of the record.  Both Peffall  and Anders have

never provided Plaintiff with a copy of the Private Complaint, as required by law, though requested by Plaintiff.   Exhibit

49.   It is obvious to Plaintiff, Detective Anders was chosen because she has no clue how a small business works, what defines a small business and when any private company has to inform the SEC.

50.   As proof of the above, Plaintiff spent several days courteously preparing examples to show the two detectives that indeed the company was operating, but upon the very first instance of meeting Peffall and Anders it became apparent of their prejudice when Plaintiff at the first meeting within one minute was asked by Anders to produce the filing with the SEC which requires that a company register ONLY when a company has a minimum of 500 shareholders and recently upwards-adjusted minimum of $10,000,000.00 US in capital.

51.   Clearly that well known or easily found facts were unknown to Anders.   But her questions clearly showed she was acting on behalf of Matthews' friend not the impartially of the law.   The next questions concerned if Plaintiff had the Minutes of the Corporation and details of Board Meetings.   Again, not known to her in any manner whatsoever was that both areas are not mandated by the Commonwealth of Pennsylvania when a corporation has one major majority owner.

52.   Anders illiteracy in business clearly demonstrates why she was chosen by Peffall to be the point person but she willingly continues to participate in the scheme

53.   The most damaging fact shown to Plaintiff as to the pre-determined bias was when at that meeting Plaintiff brought a disk showing happy customers taking the tour – which will shortly be released on YouTube and on the corporate website. Instead of

15

watching the video – Anders vehement words were, "*How do I know that you did not hire some actors pretending to take the tour?*"  Such stupidity and complete bias towards Plaintiff displayed to Plaintiff all he needed to know.

54.    The poundings on the desk by Peffall and his constant threat of prosecution was another clue of the hostile environment Plaintiff was experiencing.  They refused to review any of the 1 ½ inches of bills, marketing materials, contracts and all sorts of information that clearly showed the corporation was functioning in a very fine manner but clearly in need of additional funding.

55.    Peffall bases his constant threats of prosecution solely as part of a scheme concocted and orchestrated by Magill-Magid, Matthews and himself.   Peffall not only attempts to defraud Plaintiff but Montgomery County itself of its money and services for an unwarranted threat of prosecution acting solely for the benefit of Matthews and Osborne.  Such constant threats of retaliation for Plaintiff stating his grievances is thus unconstitutional retaliation that violates the First and Fourteenth Amendments to the U.S. Constitution.

56.    Accordingly, Plaintiff seeks declaratory and injunctive relief to bar Peffall and Anders from bring retaliatory criminal charges against Plaintiff for his refusal to accede to their demands that Plaintiff provide information about himself and the corporation when their actions are based on their own corrupt participation in this matter.

57.    Peffall and Anders have made their constant threats of prosecution upon Plaintiff on 'complete air' without any merit to make it a criminal matter instead of what it is – a 1,000% small business civil contract matter under Section 10 of the U.S. Constitution

which forbids any State's impairment of the Obligations of Contracts though obviously meant for the federal government also acknowledges contracts are considered sacred.  They are now caught in their scheme because their safety net, Jim Matthews is no longer a Commissioner, but just an alleged common criminal.

58.    There is absolutely nothing in this instane that rises to a criminal matter of any sort and Matthews, McGill-Magid's and Peffall attempt to create a criminal event is purely without merit and if any business matter is questioned,  it is absolutely under contractual law, a civil matter.

59.    There is absolutely no metric that either of the two detective could show to any court to support any evidence of any criminal nature – unlike the first meeting between Plaintiff and Osborne in New Jersey for Osborne to become an investor in the importation of a 'cover' to protect cell phones from dirt and from water.

60.    At the meeting Osborne told Plaintiff that if they did get together that he had methods to hide overseas commissions and fees from the purchase price of the merchandise. That project never went forward as too complex and they never met again until the current tour business was suggested to Osborne.  He liked it and wanted to invest.  He did his due diligence and then signed the Second Round Funding document which noted that "*he was an informed investor and that he was prepared to lose his entire investment.*"  Exhibit

61.    Peffall continues to threaten retaliation of prosecution for Plaintiff's lawful questioning of his grievances protected under the First Amendment.   Peffall and Ander's cannot provide any justification of the standards they will not share with

17

Plaintiff of how they would determine something was not covered under contract civil law.

62.   This unconstitutional threat of retaliation violates the First and Fourteenth Amendments of the U.S. Constitution (hereafter "Constitution").  The unequal and unjust use of supposed Due Process is another Constitutional claim by your Plaintiff.

63.   Accordingly, Plaintiff seeks declaratory and injunctive relief to bar Peffall, Andes, McGill-Magid, and the DA, Rise Vita-Ferman from bringing retaliatory threats of criminal charges against Plaintiff for the tainted scheme to attempt to turn a 1,000% civil matter into a non-provable in any court - criminal matter, all for the sole benefit of a friend of Matthews.

64.   Peffell and Anders actions, threats of prosecution are completely without merit, and thus is made in bad faith as they have no, and can have no, reasonable expectation of obtaining any conviction for this civil matter.

65.   The Defendants cannot walk into any courtroom 'with clean hands'.  They have proven that just for a phone call they will corrupt the system and harm a fellow American.

66.   Absent injunctive relief, preliminary and permanent thereafter, Plaintiff constitutional rights will be irreparably harmed.  Additional, since some the Defendants enjoy prosecutorial immunity, Plaintiff has no remedy at law should this court deny injunctive relief.  What protection they may be able to keep is not known to the court of Plaintiff at this moment.

**FIRST CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF FIRST AMENDMENT**

67. Plaintiff's First Amendment Rights are sacred to file grievances to avoid threats of retaliation by Defendants threatening Plaintiff they will prosecute him by filing meritless felony charges against him for civil matters that are clearly not criminal

68. In essence, Defendants are trying to force Plaintiff to acquiesce to a false charge – initiated by a scheme between the Defendants to harm Plaintiff on behalf of a personal friend of the recently indicted and arrested Jim Matthews, a corrupt Commissioner of Montgomery County, PA.

**SECOND CAUSE OF ACTION**
**RETALIATION AGAINST PLAINTIFF FOR EXERCISING HIS**
**FOURTEEENTH AMENDMENT RIGHT OF DUE PROCESS**

69. Plaintiff is entitled to expect and receive equal protection under the Fourteenth Amendment to the U.S. Constitution and equal due process of law.  Clearly here,

70. their scheme to defraud Plaintiff of his rights while they cannot enter any courtroom "with clean hands' to prosecute Plaintiff for a criminal matter when they fully were aware it was a civil event before they chose to prostitute their offices solely to help a disgraced ex-Commissioner of Montgomery County, PA to incur his favor before he was hauled off to court in handcuffs for his 12 year reign of corruption.

**THIRD CAUSE OF ACTION**
**ABUSE OF POWER AGAINST PLAINTIFF UNDER THE FIFTH**
**AMENDMENT SUBSTANTIVE DUE PROCESS**

71. Defendants used Abuse of Power in their official capacity and individually to try to deprive Plaintiff of his rights.   Their constant threats of prosecution of a criminal matter which is 1,000% a civil contract law matter, except for the fact the Defendants concocted a scheme for the favor to a county commissioner who they did not know

would be arrested only three day later and their safety disappeared for their corrupt actions.

**FORTH CAUSE OF ACTION**
**ABUSE OF POWER AGAINST PLAINTIFF UNDER FOURTH**
**AMENDMENT AGAINST ILLEGAL SEARCH AND SEIZURE**

72.   Plaintiff has legal files dealing in several instances with legal correspondence between Plaintiff and lawyers which such seizure would go directly in the face of the sacred lawyer/client privilege as would his medical files which would pervert Hippa and the rule of law covering such private material not related to the immediate matter.

73.   Any attempt to raid or seize any of Plaintiff's property through a sworn statement by either of them to any court would be completely self-serving to cover up their transgressions in the scheme to harm Plaintiff solely to help a friend of Matthews.

74.   Other private matters include the SEC and the back and forth dealings involving $149,000,000.00 which the SEC is pursuing for recovery – as a civil matter - with the cooperation of Plaintiff in his direct knowledge, not his participation in the event – but as a WhistleBlower.  Seizing of such sensitive information certainly could compromise that huge recovery by the SEC – Securities Exchange Commission.

## PRAYER FOR RELIEF

**WHEREFORE**, in light of the forgoing, Plaintiff respectfully request the following**:**

a)      A declaratory judgment that Plaintiff's rights have been violated and indeed their actions are unlawful in retaliation which violates the First Amendment.

b)      A declaratory judgment as Plaintiff will more than likely be victorious and that under Pennsylvania criminal law, their threat of prosecution has no basis or merit under Due Process clause of the Fourteenth Amendment to the U.S. Constitution:

c)      An injunction, preliminary and permanent thereafter, enjoining all the Defendants, their employees, agents, assigns and all those acting in concert with them, from initiating criminal charges against Plaintiff for a matter which is clearly civil – not in any way criminal.

d)      Award Plaintiff the costs incurred in this litigation, including attorney fees, if and when applicable pursuant to 42 U.S.C. 1988; and

e)      Such other relief as the Court deems just and proper.

Respectfully submitted, _____

Jeffrey Gaynor, Pro Se
Box 319, Creamery, PA 19430
484.350.5547

January 7, 2012

## VERIFICATION

I, Jeffrey Gaynor, HEREBY DECLARE, under penalties of perjury that I am over the age of eighteen and otherwise competent to testify, and that the allegations in the forgoing Verified Complaint are, to the best of my recollection and belief, true and accurate.


_____

Jeffrey Gaynor


January 7, 2012